**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ILIJA VASILJ,

    Plaintiff,

    v.

MARION B. DUZICH, DIANE DUZICH,
G. CHARLES HATCH, and WATERMAN
INTERNATIONAL, INC.,

    Defendants.

No. 07 C 5462
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Ilija Vasilj filed suit against Defendants Marian B. Duzich, Diane Duzich, G. Charles Hatch, and Waterman International, Inc. ("Waterman") over an alleged scheme to defraud Vasilj out of his proper stake in Waterman. Defendants now move for dismissal for lack of personal jurisdiction and for improper venue under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. In the alternative, Defendants seek a transfer of venue to the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1404. For the following reasons, Defendants' motion to dismiss for lack of personal jurisdiction is granted with regard to Defendant Hatch, and the remainder of the motion is denied.

**I. Factual Background**

Ilija Vasilj and Marion Duzich first met in 1998 at an event in Virginia. At this meeting, they discussed the idea of forming an investment partnership in the tourist and hospitality industry in Croatia. Upon returning home to Illinois, Vasilj received regular follow-up calls from Duzich, which expanded the next year to include calls from Diane Duzich, Marion's wife, and

Charles Hatch, the Duzichs' business associate. In addition to seeking out Vasilj's financial contribution, these calls sought to make use of Vasilj's political and business contacts within Croatia to find suitable investment opportunities. In February 1999, Marion and Diane Duzich visited Vasilj at his home in Skokie, Illinois, where they discussed the creation of Waterman and Vasilj's investment in the company. During this visit, Vasilj agreed to invest up to $1 million if the right opportunity arose. Additional discussions took place in Chicago in April and October 1999, with Charles Hatch joining the Duzichs on the latter visit. Together, Vasilj and the Duzichs also traveled to Croatia to look at potential investments. During this time, Defendants continued to stay in touch Vasilj by phone, fax, and letter.

In late May 2000, Waterman invested $3 million to purchase a majority of the shares of Svpetrvs Hoteli, dd, a publicly traded Croatian company which owns and operates the Svpetrvs Hotel, a resort hotel on the island of Brač, Croatia. Vasilj invested $600,000 in Waterman, giving him a twenty percent stake in the company. The hotel ran into some financial troubles during the next year, however, which resulted in frequent calls and written communications from the Defendants to Vasilj in Illinois requesting additional financial contributions. In September 2001, Vasilj agreed to an additional $600,000 investment, and in exchange his stake in Waterman would be increased to thirty-three percent. Much of these investments were not made in the form of a lump-sum payment to Waterman; rather, Vasilj made payments on behalf of the hotel, such as to creditors, which would be considered additional investment. By December 2001, a dispute had already arisen between Vasilj and Defendants regarding Vasilj's proper stake in Waterman based on his financial contributions. That month, the Duzichs attended a meeting in Skokie, Illinois with Vasilj to discuss a number of different issues related to Waterman, including the dispute with Vasilj, the terms of his investment, bringing in additional investors, and the hotel's

2

financial situation. To this day, Vasilj claims that he has not been awarded a proper interest in Waterman proportionate to his actual financial contributions, while also complaining that in the interim, the Duzichs, using their majority stake in Waterman, voted to grant themselves and others additional shares in the company, diluting Vasilj's ownership.

Ilija Vasilj is a resident of the state of Illinois. Marion Duzich, Diane Duzich, and Charles Hatch are all residents of the state of Texas. Waterman is a Texas corporation with its principal place of business in Galveston, Texas.

## II. Personal Jurisdiction

The plaintiff has the burden of demonstrating the existence of personal jurisdiction over the defendant. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). In order to defeat a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In reviewing the complaint and affidavits, I must read the complaint liberally and draw all reasonable inferences in favor of the plaintiff. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Furthermore, when faced with conflicting evidence, I must resolve factual disputes in the plaintiff's favor. *RAR*, 107 F.3d at 1275.

In a case based on diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *Hyatt*, 302 F.3d at 713. In Illinois, the long-arm statute extends personal jurisdiction to the limit allowed under the Due Process Clause of the Fourteenth Amendment. *See* 735 ILCS 5/2-209(c); *RAR*, 107 F.3d at 1276–77. Due process requires that a defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant establishes "minimum contacts" through actions demonstrating purposeful availment of "the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Moreover, the defendant should "reasonably anticipate being haled into court" in the forum as a result of these minimum contacts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

    *A. Minimum Contacts*

Minimum contacts with a particular forum can establish either general or specific jurisdiction. General jurisdiction for suits neither arising out of nor related to the defendant's contacts is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction exists when "the defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts." *Logan Prods. v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996). Plaintiff argues that this court has both general jurisdiction over Defendants, through the Duzichs' seafood business, as well as specific jurisdiction, through Defendants' contacts with Plaintiff in Illinois related to their business arrangement. Because the record is incomplete with regard to the Duzichs' seafood business at this time, I focus here on the question of whether I can assert specific jurisdiction over Defendants.

Defendants have established sufficient minimum contacts with Illinois such that jurisdiction by this court comports with due process. Under the Illinois long-arm statute, jurisdiction is proper when an injury transpires in Illinois, even if all other conduct takes place elsewhere. *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F. Supp.

2d 898, 910 (N.D. Ill. 2003); *Celozzi v. Boot*, No. 00 C 3285, 2000 WL 1141568, at *3 (N.D. Ill. Aug. 11, 2000). Where the injury is economic, the plaintiff must additionally demonstrate intent to affect an Illinois interest. *Celozzi*, 2000 WL 1141568, at *3 (*citing Arthur Young & Co. v. Bremer*, 554 N.E.2d 671, 676 (Ill. App. Ct. 1990). The Seventh Circuit has determined that communications by a nonresident defendant, coupled with an intent to further her scheme to defraud an Illinois corporation, was a sufficient basis for jurisdiction, and that making such communications as part of a scheme to defraud an Illinois resident clearly evidenced an intent to affect an Illinois interest. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir. 1990). In this case, Vasilj has alleged an economic injury in Illinois as a result of Defendants' fraudulent conduct, and Defendants are therefore subject to the reach of Illinois' long-arm statute.

Furthermore, soon after Vasilj's first meeting with Defendant Marion Duzich in 1998 in Virginia, a steady stream of communication flowed from Defendants to Vasilj here in Illinois. First Defendants contacted Vasilj to discuss bringing him in as a partner in pursuing investment opportunities in the tourist and hospitality industry in Croatia. Later they contacted Vasilj to maintain the business partnership that resulted from his investment. Also, Defendants' presence in the forum state "while conducting business relevant to the dispute" is a significant factor in determining whether the exercise of personal jurisdiction is appropriate. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213–14 (7th Cir. 1984). For example, visits to a forum state in order to negotiate with a plaintiff are "significant in the formation of the contract" and can constitute sufficient contact so as to satisfy due process. *See Wis. Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 677–78 (7th Cir. 1980). In this case, Defendants Marion and Diane Duzich traveled to Illinois to meet with Vasilj on three separate occasions between February 1999 and October 1999 to discuss investment opportunities in Croatia and the extent of Vasilj's

investment in a joint venture. Defendant Hatch joined the Duzichs on the October 1999 trip. Then, following the acquisition of the Svpetrvs Hotel, the Duzichs again came to Illinois to meet with Vasilj in December 2001 to discuss, *inter alia*, the terms of his investment, the future of Waterman and the Svpetrvs Hotel, the hotel's financial problems, and the dispute that is now at the center of this lawsuit. These visits to the forum state were significant in the formation of the business relationship between Defendants and Vasilj. As such, those visits satisfy the due process requirement that Defendants purposefully availed themselves of the privilege of conducting those activities here, and thereby invoked the benefits of Illinois laws. Accordingly, it is presumptively not unreasonable to require Defendants to submit to the burdens of litigation in Illinois as well. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

In addition to these visits, all Defendants regularly communicated with Vasilj via telephone, facsimile, and letter. "Illinois courts have held that a defendant that initiates phone and mail communications in furtherance of a business agreement has sufficient minimum contacts, regardless of whether the defendant traveled to Illinois." *Wasendorf v. DBH Brokerhaus AG*, No. 04 C 1904, 2004 WL 2872763, at *4 (N.D. Ill. Dec. 13, 2004) (*citing Kalata v. Healy*, 728 N.E.2d 648, 654–55 (Ill. App. Ct. 2000)). Thus, "[w]hen a defendant is responsible for initiating several significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the requirements of due process." *Reid v. GSI Lumonics, Inc.*, No. 01 C 927, 2002 WL 318288, at *4 (N.D. Ill. Feb. 25, 2002) (*citing Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985)). Vasilj estimates that he received hundreds of phone calls from Defendants between 1998 and 2002, sometimes daily, sometimes multiple times per day. He also received dozens of written communications, usually by fax. Early on, these communications sought Vasilj's partnership and investment money; later, these

6

communications dealt with Waterman, the hotel, and requests for additional infusions of cash by Vasilj into the failing business. Further, Charles Hatch played a lead role in negotiating and drafting the promissory note that he eventually forwarded to Vasilj in Illinois to secure a portion of Vasilj's initial investment. Each of these contacts, as well as the meetings in Illinois, taken together, more than satisfy the minimum contacts standard set by *International Shoe*. Plaintiff has thus demonstrated that Defendants had sufficient minimum contacts with Illinois for this court to exercise personal jurisdiction.[1]

Plaintiff also bears the burden of establishing that the exercise of jurisdiction in Illinois would be fair and reasonable by demonstrating that personal jurisdiction over the Duzichs, Hatch, and Waterman would comport with "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 463. However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the . . . defendant." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). In this case, no such serious burdens are expected of Defendants. First, by purposefully reaching out to the state of Illinois and conducting business with an Illinois citizen, Defendants were on notice that they may be subject to suit in this state. *See Volkswagen*, 444 U.S. at 297. Second, they have already traveled to Illinois on a number of occasions to conduct business with Vasilj. Third, the evidence presented does not indicate voluminous records that would have to be transported to Illinois. Finally, Illinois has a significant interest in the adjudication of this case given that Vasilj is a resident of the state and he suffered an economic injury as a result of a

---

[1] Plaintiff also argued for personal jurisdiction over Defendants Diane Duzich and Charles Hatch under the conspiracy and "effects" theories. Because I find that Plaintiff has demonstrated the requisite minimum contacts for all Defendants, I do not address these alternative theories of jurisdiction.

business arrangement largely negotiated here. Thus, I find that the exercise of personal jurisdiction over Defendants in this case does not offend traditional notions of fair play and substantial justice.

### B. *The Fiduciary Shield Doctrine*

Defendants Marion Duzich, Diane Duzich, and G. Charles Hatch, all residents of Texas, also argue that I do not have personal jurisdiction over them under the "fiduciary shield" doctrine. In Illinois, the "fiduciary shield" doctrine precludes courts from exercising jurisdiction over a non-resident corporate official when the only contacts that individual has with Illinois are made in his or her corporate capacity. *See Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir. 1994) ("This doctrine . . . denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." (internal citations omitted)). The Illinois Supreme Court has stated that where an individual defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990). Defendants argue that the fiduciary shield doctrine applies and defeats personal jurisdiction over them because their actions in Illinois were limited to acts performed on behalf of Waterman.

The fiduciary shield doctrine, however, is discretionary or "equitable," rather than an absolute entitlement. *See Burnhope v. Nat'l Mortgage Equity Corp.*, 567 N.E.2d 356, 363–64 (Ill. App. Ct. 1990). In determining the applicability of the fiduciary shield doctrine to corporate officers and directors, courts often focus on whether a defendant who is in a high-ranking position and has decision making authority also has a personal financial interest. Thus, courts

8

have held that the doctrine does not apply to "an individual who is a high-ranking company officer or shareholder [who] has a direct financial stake in the company's health." *See R-Five, Inc. v. Sun Tui, Ltd.*, No. 94 C 4100, 1995 WL 548633, at * 5 (N.D. Ill. Sept. 12, 1995) (personal jurisdiction existed where the defendant was "president, board member, and (most importantly) shareholder of [the corporation]" and "was not merely obeying the orders of his superiors"); *see also Fountain Mktg. Group, Inc. v. Franklin Progressive Res., Inc.*, No. 96 C 2647, 1996 WL 406633, at *4 (N.D. Ill. July 16, 1996) (refusing to apply the fiduciary shield doctrine to a chief executive officer who, along with his wife, owned all of the shares in the company); *Glass v. Kemper Corp.*, 930 F. Supp. 332, 341 (N.D. Ill. 1996) (applying the fiduciary shield to a director who did not hold substantial amount of stock or exercise discretion over contacts with Illinois); *Brujis v. Shaw*, 876 F. Supp. 975, 980 (N.D. Ill. 1995) (Moran, J.) (declining to apply the fiduciary shield where an individual defendant owned a majority of the shares of the corporation and therefore had a personal financial interest). "The determinative factor is the individual's status as a shareholder, not merely as an officer or director." *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001).

In this case, Marion Duzich was Waterman's Chairman of the Board and President, and he was the sole owner of Waterman until Vasilj purchased twenty percent of the company in 2000. At the time this dispute arose, Marion Duzich owned eighty percent of Waterman's shares. Diane Duzich was Waterman's Vice-President and Secretary, as well as a member of its board. While she was not initially an individual shareholder in Waterman, she and her husband, Marion Duzich, exercised control over the company together, and she clearly had a financial interest through him. Defendants Marion and Diane Duzich thus stood to personally benefit from Waterman's actions in Illinois. As such, equity does not compel the application of the fiduciary

shield doctrine here to protect Marion or Diane Duzich from this court's exercise of personal jurisdiction over them under Illinois law.

Defendant Hatch presents a different circumstance, however. While he has held the positions of Vice-President, Assistant Secretary, and member of the board of directors at Waterman, he has never owned a single share in the company. All of Hatch's dealings with Vasilj in Illinois took place in his corporate capacity as an agent of Waterman. With no personal financial stake in the company, it is difficult to see how Hatch would stand to profit from any alleged scheme to defraud Vasilj of his proper stake in Waterman. Accordingly, the fiduciary shield doctrine precludes my exercise of personal jurisdiction over Defendant Hatch.

## III. Venue

Defendants argue that venue is improper in this district under 28 U.S.C. § 1391(a), which allows diversity cases to be heard in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Since § 1391(a)(2) is the only basis for venue in this case, the question is whether a substantial part of the events or omissions giving rise to this case occurred in this district. "This standard does not require that the majority of the events pertaining to the case took place in the forum district." *D'Ancona & Pflaum LLC v. M2 Software, Inc.*, No. 00 C 7150, 2001 WL 873021, at *1 (N.D. Ill. Aug. 2, 2001) (*citing TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998)). Because venue may be proper in more than one district, "[i]f the selected district's contacts are 'substantial' it should make no difference that another's are more so, or the most so." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1166–67 (N.D. Ill. 1995) (*quoting Merchants Nat'l Bank v.*

*Safrabank*, 776 F. Supp. 538, 541 (D. Kan. 1991)) (internal quotation marks omitted). Venue under the "substantial part" provisions of § 1391 "may be satisfied by a communication to or f[ro]m the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Celozzi*, 2000 WL 1141568, at *6; *see also Pasulka v. Sykes,* 131 F.Supp.2d 988, 994 (N.D.Ill.2001). "To be 'substantial,' it is enough to establish that the events that took place in Illinois were 'part of the historical predicate for the instant suit.'" *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (*quoting Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)).

As a substantial part of the events giving rise to this case occurred here, venue is proper in the Northern District of Illinois. The negotiations leading up to Vasilj's investment in Waterman occurred between Vasilj and Defendants either during face-to-face discussions in Illinois or through telephone calls and written communications by Defendants in Texas to Vasilj in Illinois, all of which have a sufficient relationship to Vasilj's claims. In addition, Vasilj's investment was tendered from an Illinois bank account. Furthermore, because a tort occurs in Illinois when the injury from the tortious act is suffered in the state, *see Arthur Young & Co. v. Bremer,* 554 N.E.2d 671, 676 (Ill. App. Ct. 1990) ("In order to sustain jurisdiction based on the commission of a tortious act in Illinois, the plaintiff must allege that the defendant performed an act or omission which caused an injury in Illinois, and that the act or omission was tortious in nature."), a proper venue is where the injury from tortious conduct is suffered. *Celozzi*, 2000 WL 1141568, at *6. Here, Vasilj alleges that he suffered an economic injury as a result of Defendants' conduct. Thus, a substantial part of the events or omissions giving rise to the claims occurred in this district and venue is proper here. Defendants' motion to dismiss based on improper venue is denied.

## IV.  Transfer of Venue

Finally, in the event that I find personal jurisdiction and venue to be proper, Defendants seek to transfer this case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interests of justice."  To transfer a case under § 1404(a), Defendants must show that: (1) venue is proper in this court, (2) venue and jurisdiction are proper in the Southern District of Texas, and (3) the transfer will serve the convenience of the parties and witnesses and the interests of justice. *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995).  The first and second factors are satisfied.  As discussed *supra*, venue is proper in this court.  Venue and personal jurisdiction are also proper in the transferee court as all Defendants are domiciled in Texas and at least some of the alleged acts giving rise to Vasilj's claims occurred in Texas.  This motion to transfer turns on the third factor:  the convenience of the parties and witnesses and the interests of justice.  "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."  *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir.1986).  The decision to transfer is committed to my sound discretion. *Id.* at 219.

A plaintiff's choice of forum is entitled to substantial weight under § 1404(a), particularly where it is also the plaintiff's home forum.  *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *ISI Int'l Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir. 2001) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (internal

quotation marks omitted). Thus, the fact that Vasilj has brought this action in the Northern District of Illinois, his home forum, weighs heavily against transfer.

Although Defendants argue that they are each residents of Texas and the documents pertaining to Waterman's stock are in Texas, this is not sufficient to shift the balance strongly in their favor. The fact that this action could have been brought in Texas does not mean that it should now be transferred there. Defendants have not demonstrated that litigating in Texas would be significantly more convenient and therefore have not met their burden to transfer venue.

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is granted with respect to G. Charles Hatch. With respect to Defendants Marion Duzich, Diane Duzich, and Waterman, the motion to dismiss for lack of personal jurisdiction and improper venue, and in the alternative, to transfer venue, is denied.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: May 13, 2008